## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER KINES,** | § | |
| **TDCJ No. 02270633,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-22-CA-01089-JKP** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Christopher Kines's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  (ECF No. 1).  In the § 2254 petition, Petitioner challenges the constitutionality of his 2019 state court convictions for murder and tampering with evidence, arguing, among other things, that the prosecution committed misconduct and that he was denied the right to effective assistance of counsel.  Also before the Court are Respondent Bobby Lumpkin's Answer (ECF No. 17) and Petitioner's Reply (ECF No. 20) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

## I.  Background

### A.    The Offense

In its opinion affirming Petitioner's convictions on direct appeal, the Texas Fourth Court of Appeals accurately summarized the evidence presented by the State:

In its case-in-chief, the State primarily relied on the testimony of Ronald Jacobs, Alejandro Marroquin, and Emilee Casias.  These witnesses each described an alleged assault on an unnamed female that occurred earlier on the night of [Jessica] Edens's murder.

Jacobs testified that, on May 10, 2016, he and Marroquin arrived at the home of Jacobs and [Petitioner] and saw a female tied up on the floor of [Petitioner]'s room.  Jacobs observed [Petitioner] and Stuart Fraser place the female in a vehicle, and then Marroquin drove the female away from the house.  Marroquin testified that he drove the female to an open area near a school, where he left her bound inside the vehicle.  He then walked back to the house.

Casias testified that [Petitioner], Fraser, and Edens had beaten, robbed, and restrained the female with duct tape in [Petitioner]'s room.  Jacobs and Marroquin then arrived, placed the female in her vehicle, and drove her away.  When Jacobs and Marroquin arrived back at the residence, they told [Petitioner] they "took care of that."

According to all three witnesses, after they returned, Fraser demanded that no one leave the house until the next morning.  At that time, Jacobs, Marroquin, Casias, Edens, Fraser, and [Petitioner] were present in the house.

Jacobs testified that, at some point during the night of May 10–11, 2016, Edens wanted to leave, but Fraser and [Petitioner] refused to let her go.  After repeated efforts by Edens to leave the house, Edens became upset and Fraser hit her with the butt of a gun.  According to Jacobs, [Petitioner] told him to leave the house, and when he returned about twenty minutes later, he observed Edens dead on the floor, covered in a white blanket.

Marroquin similarly testified, adding that [Petitioner] had placed duct tape on Edens's mouth and threatened to hit her if she took it off.  After she removed the duct tape, [Petitioner] and Fraser moved her to the floor and started punching her.  When Edens attempted to crawl toward the back door, Fraser stomped on her twice and hit Edens on the head with an aluminum cane, and [Petitioner] hit her on the head with a moonshine bottle that looked like a gallon jug.  Next, Fraser hit Edens on the head with a table saw.  [Petitioner] then got on top of Edens and "it looked like [Petitioner] was trying to smother her."  Marroquin believed Edens was dead after [Petitioner] got off of her.

Casias offered a similar version of the events, again relaying Edens's attempts to leave and the actions by [Petitioner] and Fraser, respectively.  Medical expert testimony established that Edens's cause of death was strangulation and head trauma, in concert.

Jacobs, Marroquin, and Casias also testified similarly about events that transpired after the murder.  All three testified that Fraser left the house after Edens's murder.  According to Jacobs and Marroquin, [Petitioner] ordered them to wrap Edens's body in a blanket and a blue tarp and to place the body in the trunk of Edens's vehicle.  The three and [Petitioner] drove to a pawnshop to pawn a TV and jewelry.  The group then drove to a dollar store to buy shovels and then to Calaveras Lake, where they attempted unsuccessfully to bury Edens's body.  They ultimately pulled over on the side of a country road in the area of Floresville, Texas, where [Petitioner] burned her body.  They then drove back to San Antonio where they disposed of the shovels.  As the group drove through an alley near the house where [Petitioner] and Jacobs lived, Jacobs jumped out of the vehicle.  [Petitioner] then drove to a convenience store where he bought a can of butane.  He then drove into a vacant lot, where the vehicle got stuck on a slab of concrete.  Casias testified that, while Marroquin was putting lighter fluid on the vehicle, she took off running towards her aunt's house.  [Petitioner] walked off towards the direction Casias went, and Marroquin walked back to the house.  Jacobs and Marroquin later returned to the vehicle and, as instructed by [Petitioner], Jacobs lit the vehicle on fire.

The Fourth Court of Appeals then summarized the evidence presented by the defense as follows:

[Petitioner] was the only defense witness.  [Petitioner] testified that, on May 10, 2016, Casias and Edens spent the night at his house.  Around 2 a.m., Edens visited Priscilla Fonseca's house but returned about 30 minutes later.  The following afternoon around 1 p.m., [Petitioner], Casias, Jacobs, and Marroquin drove to Calaveras Lake to fish, and Edens let him use her vehicle.  Edens had stayed behind at their residence to do drugs with Jacobs's uncle, Baylum.[1]  The group left Calaveras Lake at about 6 p.m., stopped at a convenience store, and then headed back home.  When they arrived back at the house, Edens and Baylum were still there.  Jacobs and Marroquin discovered drugs were missing from their room and accused Baylum and Edens of stealing it.  Baylum blamed Edens, and Jacobs and Marroquin wanted Edens to come up with the money for the stolen drugs.  Marroquin, Jacobs, Casias, and Edens then left in Edens's vehicle.  [Petitioner] stated that was the last time he ever saw Edens.  [Petitioner] denied any knowledge about the alleged assault on the unnamed female, Edens's murder, the disposal of Edens's body, and the destruction of Edens's vehicle.

*Kines v. State*, No. 04-19-00244-CR, 2020 WL 1866274 at *2-3 (Tex. App.—San Antonio, Apr. 15, 2020, pet. ref'd); (ECF No. 18-25).

---

[1]       The record does not indicate this individual's full name.

B.    **Procedural History**

After hearing all of the evidence, a Wilson County jury convicted Petitioner of murdering Jessica Edens and also of tampering with evidence (her corpse). *State v. Kines*, No. 16-07-153-CRW (81st Dist. Ct., Wilson Cnty., Tex. Apr. 18, 2019); (ECF No. 18-1 at 35-38). Following a separate punishment hearing, the trial court sentenced Petitioner to fifty years of imprisonment for murder and twenty years of imprisonment for tampering, with the sentences to run concurrently. *Id*. On direct appeal, the Texas Fourth Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *Kines*, No. 2020 WL 1866274; (ECF No. 18-25). The Texas Court of Criminal Appeals then refused his petition for discretionary review. *Kines v. State*, No. 0535-20 (Tex. Crim. App. Nov. 11, 2020).[2]

Following his direct appeal proceedings, Petitioner challenged the constitutionality of his convictions by filing an application for state habeas corpus relief. *Ex parte Kines*, No. 93,154-01 (Tex. Crim. App.); (ECF No. 19-7 at 8-26). The Texas Court of Criminal Appeals denied the application without written order. (ECF No. 19-14). Several months later, Petitioner filed a second application for state habeas corpus relief which the Texas Court of Criminal Appeals eventually dismissed as a subsequent application pursuant to Tex. Code Crim. Proc. Art. 11.07, § 4. *Ex parte Kines*, No. 93,154-02 (Tex. Crim. App.); (ECF Nos. 19-23 at 6-24, 19-30).

Thereafter, Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief. (ECF No. 1). In the petition and the attached supplement, Petitioner raised a total of twenty-seven separate allegations challenging the constitutionality of his underlying state court convictions.

---

[2]        *See also*  http://www.search.txcourts.gov, search for "Kines, Christopher" last visited August 27, 2024.

## II.  Petitioner's Allegations

In his § 2254 petition (ECF No. 1) and Reply to Respondent's Answer (ECF No. 20),

Petitioner set forth the following claims for relief:[3]

1.      The trial court failed to conduct a legally mandated "gatekeeper" hearing
        with regard to any of the State's eleven expert witnesses.

2.      The State engaged in prosecutorial misconduct by:

        (a)     presenting false testimony, and

        (b)     presenting an improper closing argument.

3.      His trial counsel rendered ineffective assistance by failing to:

        (a)     investigate the case,

        (b)     interview witnesses,

        (c)     subpoena witnesses,

        (d)     call witnesses at trial,

        (e)     conduct voir dire on the State's expert witnesses,

        (f)     hold the trial court to its duty to hold the legally mandated
                "gatekeeper" hearing,

        (g)     acquire expert witnesses,

        (h)     move to strike prospective juror No. 13 after the juror admitted she
                could not be impartial,

        (i)     move to strike prospective juror No. 3 after she revealed a close
                relationship with the law enforcement officer investigating the
                case,

        (j)     request an inquiry into racial bias and raise the issue of
                underrepresentation on the venire panel,

        (k)     effectively cross-examine State's witnesses or object to hearsay
                testimony,

        (l)     object to the misrepresentation of evidence,

---

[3]      For the sake of clarity and coherence, the Court has renumbered the claims raised by Petitioner in his
§ 2254 petition (ECF No. 1 at 16-20).

(m)     investigate crime scenes and raise corpus delicti issues,

(n)     file a motion to suppress evidence,

(o)     file a motion for discovery,

(p)     impeach State's witnesses that gave false testimony,

(q)     investigate the character of State's witnesses,

(r)     object to petitioner being forced to wear jailhouse shoes during trial, and

(s)     object to the prosecution's improper closing argument.

4.     The cumulative effect of counsel's errors rendered counsel ineffective and also constructively denied him the right to counsel.

5.     His appellate counsel rendered ineffective assistance by failing to:

(a)     raise viable issues during the motion for new trial hearing and on direct appeal,

(b)     investigate the record, and

(c)     correct erroneous facts in the State's brief on direct appeal.

6.     The cumulative effect of the errors committed by trial counsel, the prosecution, and the trial court deprived Petitioner of his due process rights and a fair trial.

### III.  Procedural Default

The Court first notes that a number of Petitioner's allegations—specifically, Claims 1, 4, and 5, and the majority of Claim 3—are subject to denial as procedurally defaulted.[4]  Procedural default occurs where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that state procedural rule provides an independent and adequate ground for

---

[4]     Respondent incorrectly argues that the claims are procedurally defaulted because Petitioner failed to exhaust his state court remedies by raising the claims either on direct appeal or during his state habeas corpus proceedings.  (ECF No. 17 at 8-11).  As discussed below, each and every one of these claims (save for Claim 2(a)) was raised in Petitioner's second state habeas application.  Strangely, Respondent admits as much in his answer.  *Id.* at 10.  Because the exhaustion requirement is inapplicable in the instant case, Respondent's rather contradictory argument will be ignored.

the dismissal. *Davila v. Davis*, 582 U.S. 521, 527 (2017); *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). The "independent" and "adequate" requirements are satisfied where the state court clearly indicates that its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts. *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (citing *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001)). This doctrine ensures that federal courts give proper respect to state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

In this case, the Texas Court of Criminal Appeals refused to consider the instant allegations when Petitioner raised them for the first time in his second state habeas application, dismissing the application as subsequent under Texas Code of Criminal Procedure Article 11.07 § 4(a)-(c). (ECF No. 19-30). That statute, codifying the Texas "abuse of the writ" doctrine, has repeatedly been held by the Fifth Circuit to constitute an "adequate and independent" state procedural ground that bars federal habeas review. *Ford v. Davis*, 910 F.3d 232, 237 (5th Cir. 2018) (citation omitted); *Canales*, 765 F.3d at 566; *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

Consequently, Petitioner is precluded from federal habeas review unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51; *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004). Petitioner fails to demonstrate cause and prejudice to excuse the default in either his petition or reply. (ECF Nos. 1, 20). Nor has he made any attempt to demonstrate that the Court's denial of the claim will result in a "fundamental

miscarriage of justice." Thus, circuit precedent compels the denial of Petitioner's allegations (Claims 1, 3(e)-(h), 3(j)-(o), 3(q), 3(s), 4, and 5) as procedurally defaulted.

To overcome this procedural hurdle, Petitioner refers to the actual-innocence exception set forth in *Schlup v. Delo,* 513 U.S. 298, 329 (1995). Petitioner does not allege a "freestanding" claim of actual innocence—rather, he states that he is "procedurally innocent" of the charged offense due to the various constitutional violations he has alleged throughout his petition. (ECF No. 1 at 8). Thus, it appears that this claim is offered only as a gateway to obtain federal review of otherwise procedurally-barred allegations.[5] *Id*.

Petitioner is correct that a convincing showing of actual innocence under *Schlup* may enable a habeas petitioner to overcome a procedural bar to consideration of the merits of a constitutional claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But "tenable actual-innocence gateway pleas are rare," and, under *Schlup*'s demanding standard, the gateway should open only when a petitioner presents new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 386, 401 (*quoting Schlup,* 513 U.S. at 316). In other words, Petitioner is required to produce "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 324.

---

[5] Even if Petitioner characterized this allegation as a "freestanding" claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the claim still would not provide a cognizable basis for federal habeas relief. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera*, 506 U.S. at 400). The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review. *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see also Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases).

Petitioner does not meet this demanding standard.  Indeed, Petitioner has not brought forth any new evidence establishing his innocence.  Instead, Petitioner seems to argue that he likely would not have been convicted had the various constitutional violations raised in his petition not occurred.  But such conclusory assertions do not constitute "*new* reliable evidence" establishing his innocence.  *See Ford*, 910 F.3d at 235 ("[A]bsent evidence in the record," a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") (citation omitted); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Petitioner's barebones allegation of "innocence," unsupported by any argument or "newly-discovered evidence" that might call the jury's decision into question, is insufficient. Moreover, Petitioner's allegations were already rejected by the state court during Petitioner's state habeas proceedings and do not undermine confidence in the outcome of his trial. Consequently, the procedural default of any claims raised in Petitioner's federal habeas petition will not be excused under the actual-innocence exception established in *Schlup*.

### IV.  <u>Standard of Review</u>

The remainder of the claims raised in Petitioner's federal habeas petition are governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## V.  Merits Analysis

### A.    Prosecutorial Misconduct (Claim 2)

Petitioner first alleges that the State used unlawful methods in order to produce a wrongful conviction.  Specifically, in Claim 2(a), Petitioner accuses the prosecution of soliciting false testimony from three witnesses—Terry Snyder, Alejandro Marroquin, and Emilee Casias—to secure his conviction.  In Claim 2(b), he contends the prosecution impermissibly vouched for the credibility of State witnesses and expressed personal opinions about Petitioner's lack of credibility during closing arguments.

Each of these allegations, with the exception of Petitioner's allegation concerning the testimony of Terry Snyder, was raised and rejected during Petitioner's state habeas corpus proceeding.  As discussed below, Petitioner fails to demonstrate the state court's rejection of these claims was contrary to, or an unreasonable application of, Supreme Court precedent.

#### 1.    Exhaustion

In Claim 2(a), Petitioner argues that Texas Ranger Terry Snyder testified falsely that floor tiles were present in Petitioner's home at the time of the murder.  (ECF No. 20 at 11).  As discussed below, this allegation is unexhausted and procedurally barred from federal habeas corpus relief because Petitioner did not raise the claim during his direct appeal or state habeas proceedings.

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was

presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals, and a prisoner must present the substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or an application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.07. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

In this case, the record confirms that Petitioner did not properly present this allegation to Texas Court of Criminal Appeals in either his state habeas corpus application or in his petition for discretionary review. While Petitioner did appear to raise the remainder of his prosecutorial misconduct allegations from Claim 2 in his original Article 11.07 application to the state trial court (ECF No. 19-7 at 8-26), he failed to raise the instant allegation regarding Terry Snyder. Because this allegation is being presented for the first time in this federal habeas proceeding, it is unexhausted under § 2254(b).

Further, should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the Texas Court of Criminal Appeals would find the claim procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure since Petitioner already challenged his conviction in a previous state habeas application. Because Texas would likely bar another habeas corpus application by Petitioner regarding this conviction, he has committed a procedural default that is sufficient to bar federal habeas corpus review. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (finding a procedural default occurs "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred.") (citation and internal quotation marks omitted); *see also Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred).

Consequently, Petitioner is precluded from federal habeas relief on this allegation unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). But Petitioner does not argue that cause and prejudice should excuse the default, nor does he demonstrate that the Court's denial of the claim will result in a "fundamental miscarriage of justice." Thus, circuit precedent compels the denial of Petitioner's unexhausted claim as procedurally defaulted.

### 2.    False Testimony (Claim 2(a))

Petitioner contends that Alejandro Marroquin and Emilee Casias testified falsely about their respective roles in burning Edens's car following the murder. (ECF No. 20 at 11-12). Casias testified that, once Petitioner parked the car in an empty lot, she "took off running" after Marroquin began pouring lighter fluid on the car. (ECF No. 18-12 at 61, 146). Marroquin testified that he was a block and a half away from Edens's car when Ronald Jacobs later set the car on fire. (ECF No. 18-11 at 245-46, 301-02). Petitioner argues that both of their testimonies are controverted by the testimony of Dulce Gomez, a witness who lived next to the empty lot where the car was abandoned and burned, and that the State knew this testimony was false based on Gomez's pretrial statement and prior testimony.

In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial. *See also Giglio v. United States*, 405 U.S. 150 (1972). A petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, Petitioner relies on Gomez's testimony to argue that the testimonies of Marroquin and Casias were false. But due process is not implicated when testimony is challenged by another witness or is inconsistent with prior statements. Rather, contradictory testimony among different witnesses merely establishes a credibility question for the jury and does not, standing along, establish perjury. *See United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured).

While Petitioner insists that Gomez's contradictory testimony establishes that Marroquin and Casias testified falsely about their role in burning Edens's car, he has simply identified a credibility issue that was conclusively resolved by the jury. Thus, Petitioner has not shown the testimony of either Marroquin or Casias to be false, much less that the State knowingly presented the false testimony. Moreover, false testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio*, 405 U.S. at 153-54. Despite Petitioner's

14

claims to the contrary, no such likelihood exists in this case, particularly given the inconsequential nature of the testimony in question and the overwhelming evidence establishing Petitioner's guilt.    Consequently, federal habeas relief is denied, as Petitioner has not demonstrated the state court's rejection of his claims was either contrary to, or an unreasonable application of, clearly established federal law.

      3.     <u>Closing Argument</u> (Claim 2(b))

Petitioner next contends that the prosecution committed misconduct during the closing arguments of trial.  According to Petitioner, the prosecution vouched for the credibility of the State's witnesses on several occasions and generally conveyed a negative personal opinion on Petitioner's credibility as a witness.  (ECF No. 20 at 13-16).  Like his false testimony allegation, Petitioner unsuccessfully raised this issue during his state habeas proceedings.  Again, he fails to demonstrate that the state court's rejection of his claim was either contrary, or an unreasonable application of, clearly established federal law.

Allegations of prosecutorial misconduct are analyzed in two steps.  *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted).  The first is to evaluate whether the prosecutor made an improper remark.  *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted).  If so, the second step is to determine whether the defendant suffered prejudice.  *Id*.  This second inquiry sets a high bar:  "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected."  *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir. 2005)).  A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict."  *Id*.  Thus, in deciding

whether serious doubt infects the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (quoting *United States v. Mares,* 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

To start, Petitioner fails to show that the prosecution improperly vouched for the credibility of witnesses or conveyed an opinion on his credibility. Petitioner is correct that "a prosecutor may not personally vouch for the credibility of a [prosecution] witness, as doing so may imply that the prosecutor has additional personal knowledge about the witness and facts that confirm such witness' testimony, or may add credence to such witness' testimony." *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). And while a prosecutor may argue "fair inferences from the evidence that a witness has no motive to lie," he or she "cannot express a personal opinion on the credibility of witnesses." *U.S. v. Gracia,* 522 F.3d 597, 601 (5th Cir. 2008). The test for improper vouching for the credibility of a witness is whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the defendant's guilt. *U.S. v. McCann,* 613 F.3rd 486, 495 (5th Cir. 2010).

Here, Petitioner contends that the prosecutor vouched for the credibility of State witnesses by implying that Ronald Jacobs, Alejandro Marroquin, and Emilee Casias were truthful witnesses.[6] He also complains that the prosecution conveyed personal opinions about

---

[6]     For instance, the prosecution commented that the witnesses "were telling you [] the truth as to what happened during those two days." (ECF No. 18-13 at 32). Further, when commenting on Marroquin's testimony, the prosecution stated that "one of the things I can always tell when somebody's telling the truth to me is when they're not the hero of the story," which he considered "a sign somebody is being forthright with you." *Id.* at 60-61.

the credibility of his own testimony.[7]   But such comments are not *vouching* for witness credibility or the lack thereof—there is no implication that the prosecution had some secret basis for asserting that Petitioner was guilty. *Id*. at 496.   Rather, they speak only to the truthfulness of the testimony given by the witnesses during the trial, something that was placed in doubt throughout the proceedings by both defense counsel and the prosecution through cross-examination.   Because the prosecution's comments were either made in direct response to defense counsel's cross-examination or were reasonable inferences from the evidence presented at trial, they were not improper. *See, e.g., Norris v. Davis*, 826 F.3d 821, 832 n.10 (5th Cir. 2016) (recognizing the four areas of permissible subjects for jury argument under Texas law as summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement).

Even if they were improper, this Court finds nothing prejudicial about the prosecution's remarks during closing arguments.   As noted by the Texas Fourth Court of Appeals on direct appeal, the jury heard testimony from three witnesses—Jacobs, Marroquin, and Casias—who were present the night of the murder and described, in detail, the night of the murder and the attempted cover-up the following day. *Kines*, No. 2020 WL 1866274 at * 2-3; (ECF No. 18-25). Since the prosecution relied heavily on these three main witnesses, their credibility was already thoroughly tested through the cross-examination and closing arguments of trial counsel. Their testimony was also corroborated by several lay and expert witnesses as well as video evidence setting forth the timeline of the group's endeavors.   Thus, the prosecution's comments likely had very little prejudicial effect, and certainly did not cast "serious doubt on the correctness of the jury's verdict." *Ebron,* 683 F.3d at 140.   Federal habeas relief is therefore unwarranted.

---

[7]      See ECF No. 18-13 at 27 (stating that Petitioner's explanation for possessing the victim's car "makes no sense"), 52 (stating that Petitioner picked the witnesses and murder scene, not the State), 69 (stating there was "no way" for Petitioner's testimony to be true because it does not explain the need to purchase three shovels).

B.   __Trial Counsel__ **(Claims 3(a-d), (i), (p), and (r))**

In Claim 3, Petitioner raises several allegations that he was denied the right to effective assistance of counsel by his attorney at trial, Edward Adams.  Specifically, Petitioner contends that counsel failed to (1) investigate and call witnesses, (2) move to strike a biased prospective juror, (3) impeach State witnesses, and (4) object to his client wearing jailhouse garb during trial.

These allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals.  As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

2.     Counsel's Investigation (Claims 3(a)-(d))

Petitioner first contends that counsel failed to conduct a meaningful investigation into his case. Specifically, Petitioner faults counsel for failing to interview and present a number of corroborating or impeachment witnesses, including Priscilla Fonseca, Jennifer Debner, John Waclawczyk, and Genevieve Ramos. According to Petitioner, each of these witnesses supported his claim of innocence, but counsel refused to interview them or present them as witnesses at trial.

Petitioner raised these allegations for the first time in his motion for new trial.  But at the hearing on the motion, only counsel, counsel's investigator, and Petitioner testified.  (ECF No. 18-15).  None of the potential witnesses testified or provided a sworn affidavit.  Indeed, Petitioner still has not established that the witnesses were willing or available to testify at Petitioner's trial.  While Petitioner stated at the hearing (and continues to state) that each potential witness was willing to testify for him, the record does not show these witnesses were available to testify on the date of his trial.  *Id*.  For this reason alone, Petitioner fails to demonstrate that counsel was ineffective under the *Strickland* standard.  *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (finding that, to prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must demonstrate that "the witness was available to testify and would have done so").

Moreover, Petitioner fails to establish that state court unreasonably applied *Strickland* when it rejected Petitioner's IATC during his direct appeal proceedings and again during his state habeas corpus proceedings.  In refusing Petitioner's petition for discretionary review and denying his state habeas application, the Texas Court of Criminal Appeals ruled on Petitioner's allegations without written order.  For this reason, this Court "should 'look through' the unexplained decision to the last related state-court decision" providing particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Uranga v. Davis*, 893 F.3d 282, 287 n.33 (5th Cir. 2018).  In other words, the Court must look to the last reasoned state judgment that considered and rejected Petitioner's IATC claims when reviewing the claims under the doubly deferential standard set forth in *Strickland*.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals, which concluded that counsel's performance was neither deficient nor prejudicial.  In doing so, the court addressed each of Petitioner's missing witnesses:

### 2. Priscilla Fonseca

[Petitioner] contends Priscilla Fonseca was a possible and willing corroborating witness to the timeline of events he presented in his defense.  Trial counsel testified that the value of her testimony regarding the timing of events was outweighed by the potential for harm from testimony that would further implicate [Petitioner].  Trial counsel testified that Fonseca may have testified on cross-examination that [Petitioner] had gone to Fonseca's house after Edens's murder looking for Casias.

The jury could have reasonably questioned [Petitioner]'s innocence after hearing testimony that, following Edens's murder, [Petitioner] went searching for Casias, a purported witness to the very crime for which [Petitioner] was being prosecuted.

Based on this record, we conclude that trial counsel's decision not to develop and use Fonseca as a witness did not fall below an objective standard of reasonableness.  *See Bone*, 77 S.W.3d at 835.

### 3. John Waclawczyk and Terence Lamont Mason

[Petitioner] contends that Waclawczyk, while incarcerated, heard Marroquin state [Petitioner] was not involved in Edens's murder.  [Petitioner] contends Terrence Lamont Mason shared a cell with Marroquin and that Mason heard Marroquin admit to lying to police in order to implicate someone else.  Trial counsel testified these statements benefited [Stuart] Fraser, not his client.  The State's theory was that [Petitioner] and Fraser, in concert, murdered Edens.  Thus, the statements would have had little to no benefit for [Petitioner] because the jury still could have concluded that he murdered Edens.  [Petitioner] does not complain of trial counsel's performance during trial, and the record shows that counsel cross-examined Marroquin extensively about the inconsistencies between his statements to police and his trial testimony, as well as between his testimony and that of Jacobs and Casias.  Because the record is silent as to trial counsel's reasons for not investigating or presenting an impeachment witness, [Petitioner] cannot overcome the strong presumption of reasonable assistance.  *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.); *see Bone*, 77 S.W.3d at 836 ("The defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").

*4. Genevieve Ramos*

[Petitioner] contends Genevieve Ramos would have testified that Marroquin told her that the "real killer" was Fraser and that Marroquin intended to provide a written statement clearing [Petitioner]'s name.  The record indicates Ramos appeared by bench warrant and was interviewed by counsel, who ultimately determined Ramos could not benefit [Petitioner].  For the same reasons outlined above, we determine counsel's decision did not fall below an objective standard of reasonableness.

*5. Jennifer Debner*

According to [Petitioner], Jennifer Debner was Edens's best friend, and would have testified that Casias is a "toxic person," that Debner and her friends had always joked that Casias would end up killing Edens, and that Casias's brother did not believe anything Casias said.  Trial counsel testified that, like Fonseca, Debner on cross-examination may have claimed [Petitioner] had tried to force his way into Fonseca's house looking for Casias following Edens's death.  Additionally, the record shows that trial counsel cross-examined Casias extensively about the inconsistencies in her trial testimony, as well as her admitted drug use and its effect on her apparent lack of recollection as to certain details of Edens's murder.  Under the circumstances, it was reasonable for counsel to determine that the potentially beneficial impeachment testimony that Debner could have provided was outweighed by the risk of eliciting potentially incriminating testimony that could have weakened [Petitioner]'s innocence defense.  *See Bone*, 77 S.W.3d at 835.  Moreover, trial counsel's failure to present Debner as a witness did not preclude [Petitioner] from advancing his defensive strategy to impeach Casias's credibility.  *See Alvarado*, 2006 WL 332536, at *8. We conclude that trial counsel's decision did not fall below an objective standard of reasonableness.

*Kines*, No. 2020 WL 1866274 at *4-5; (ECF No. 18-25 at 8-10).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  The appellate court's opinion thoroughly explained counsel's strategic reasons for not presenting, or further investigating, the witnesses in question. Petitioner has not shown that this determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

Furthermore, this Court has independently reviewed the record of these proceedings and finds that counsel's strategic decisions were reasonable. "[C]ounsel has wide latitude in deciding how best to represent a client. . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Indeed, counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).

Petitioner fails to demonstrate that trial counsel's strategy was ill chosen. To the contrary, the record indicates that counsel made the decision not to call Petitioner's witnesses based on his opinion that any potential benefit from their testimonies was outweighed by the potential for harm to his defense. Although Petitioner disagrees with this strategy in hindsight, he has not shown that counsel's decisions were unreasonable, much less that the state court's denial of this claim was an unreasonable application of *Strickland*. Thus, under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's IATC claim cannot survive. *See Richter*, 562 U.S at 105.

3.   <u>Voir Dire</u> (Claim 3(i))

Petitioner next argues that counsel was ineffective for failing to strike prospective juror No. 3 for cause. During voir dire, prospective juror No. 3 indicated that she knew Johnny Deagen, the Chief Deputy for the Wilson County Sheriff's Office, and played bunco with his

wife. (ECF No. 18-7 at 63, 65). Chief Deagen investigated the crime scene where the victim's body was located and testified at Petitioner's trial. (ECF No. 18-8 at 101-30). Petitioner contends that, based on the relationship between prospective juror No. 3 and Chief Deagen, the possibility of bias was so strong that any reasonably competent attorney would have moved to strike.

"The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy." *Buckner v. Davis*, 945 F.3d 906, 910 (5th Cir. 2019) (citing *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009)). There are two ways a party may establish that a juror is biased and thus incompetent to serve: implied bias and actual bias. *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003). Implied bias occurs only in a "narrow range of cases" where a juror's relationship to a party or the case raises such doubts about his ability to uphold his oath that he will be presumed biased as a matter of law. *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring); *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006). Such rare occurrences are when a juror is "employed by the prosecuting agency, [is] a close relative of a participant in the trial, [or is] somehow involved in the transaction that is the subject of the trial." *Smith*, 455 U.S. at 222; *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

None of these limited situations are present in the instant case. Prospective juror No. 3 did not indicate that she was employed by the prosecution, was related to a trial participant, or was somehow involved in the murder that was the subject of the trial. While the juror did indicate that she knew Chief Deagen and his wife, this falls well "outside the extreme genre of cases Justice O'Connor pointed to in her concurring opinion in *Smith v. Phillips*." *Uranga*, 893 F.3d at 288. Thus, there has been no showing of implied bias in this case.

Similarly, Petitioner fails to demonstrate an actual bias on the part of prospective juror No. 3.  A juror harbors an actual bias, such that he may be excluded for cause, if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (*quoting Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).  On federal habeas corpus review, proof of actual bias requires a showing that the juror in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002).  A juror is disqualified, for example, if he *unequivocally* states during voir dire that he cannot be fair and impartial. *Virgil v. Dretke*, 446 F.3d 598, 613 (5th Cir. 2006).  But it is petitioner's burden to prove that a biased juror served on his jury. *See Smith*, 455 U.S. at 215 (stating that prospective jurors are presumed impartial).

Petitioner fails to meet this burden.  Petitioner contends that prospective juror No. 3's relationship with Chief Deagen's wife resulted in a bias that ultimately deprived him of his right to a fair and impartial jury.  But as the record demonstrates, the juror unequivocally stated that she could fairly and impartially serve as a juror in Petitioner's trial. *See* ECF No. 18-7 at 63 (stating that her relationship with Mrs. Deagen would not affect her ability to evaluate Chief Deagen's testimony), 65-66 (stating her relationship with Mrs. Deagen is "just bunco" and that they do not gossip about Mrs. Deagen's husband).  Nothing in the juror's voir dire statements indicated a "fixed opinion" that would prevent her from impartially judging whether or not Petitioner was guilty. *Chavez*, 310 F.3d at 811.  As a result, counsel cannot be deficient for failing to challenge the juror for cause. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *see also Sones v. Hargett*,

61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point).  Federal habeas relief is therefore unwarranted.

       4.      <u>Failure to Impeach</u> (Claim 3(p))

      In his next allegation, Petitioner faults counsel for failing to adequately cross-examine several of the State's witnesses.  Petitioner believes that Terry Synder, Ronald Jacobs, Alejandro Marroquin, and Emilee Casias all gave inconsistent and false testimony at trial.  Petitioner contends that counsel failed in his duty to impeach these witnesses based on the alleged falseness of their respective testimonies.  But as discussed in Section V(a)(2), Petitioner fails to demonstrate that the testimonies of Marroquin and Casias were actually false.  Thus, counsel cannot be deficient for failing to press a frivolous point regarding those witnesses.  *Sones*, 61 F.3d at 415 n.5.

      Further, Petitioner chastises counsel's performance during cross-examination of each witness but fails to provide any specific argument or line of questioning that counsel should have undertaken.  For this reason alone, Petitioner's conclusory and speculative allegation is unworthy of federal habeas relief.  *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

      Regardless, a review of the trial transcript indicates that counsel thoroughly cross-examined each of the State's witnesses on several issues, including their credibility and conflicts in their testimony.  *See* ECF Nos. 18-8 at 255-69 (cross-examination of Synder), 18-11 at 7-157 (cross-examination of Jacobs), 252-310 (cross-examination of Marroquin), and 18-12 at 69-160 (cross-examination of Casias).  Counsel's cross-examination was reasonable and "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight

that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. App'x 283, 292 (5th Cir. 2016) (unpublished) (citing *Strickland*, 466 U.S. at 689).  As such, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was unreasonable.

     5.     <u>Jailhouse Garb</u> (Claim 3(r))

Petitioner's last IATC claim asserts that counsel provided him with civilian clothes to wear during trial but failed to provide him with appropriate shoes.  According to Petitioner, he pleaded with counsel to purchase civilian shoes for him to wear at trial, but counsel ignored his requests.  As a result, Petitioner contends, he was forced to wear his blue jailhouse-issued shoes throughout his entire trial, which undermined the presumption of his innocence.

Other than his self-serving assertions, Petitioner has provided no evidence that counsel refused to buy him shoes, essentially forcing him to wear prison-issue shoes at trial.  Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims.  Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal.  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch*, 907 F.2d at 530 (same).

Here, Petitioner's allegation that counsel forced him to wear jail-issued shoes is conclusory, speculative, and unsupported by any evidence or facts.  But "absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ford*, 910 F.3d at 235 (citing *Ross*, 694 F.2d at 1011).  For this reason alone, Petitioner's claim could be denied.  *See Demik*, 489 F.3d at 646 ("[C]onclusory

allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller*, 200 F.3d at 282).

Nevertheless, the record demonstrates that Petitioner's IATC allegation is meritless. Petitioner is correct that "[a] government entity violates th[e] presumption of innocence when it compels an accused to stand trial before a jury while dressed in identifiable prison garb." *United States v. Pryor*, 483 F.3d 309, 311 (5th Cir. 2007) (internal quotation marks and citation omitted). But here, nothing in the record supports his claim that he was wearing prison-issue shoes or that his shoes were seen by the jury or identifiable as prison garb. Indeed, the only reference to Petitioner's shoes in the record identify the shoes simply as "blue shoes." *See* ECF Nos. 18-8 at 174 (identifying Petitioner as wearing "a black T-shirt, blue shoes"), 18-9 at 16 (identifying Petitioner as wearing "a white shirt and blue shoes"). As such, Petitioner fails to show that counsel was deficient in his performance or that he suffered any prejudice as a result of counsel's failure to object to his allegedly standing trial in jail-issued footwear. *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance").

6.   Conclusion

In sum, Petitioner failed to demonstrate that the state court's ultimate ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing these allegations under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claims. Federal habeas corpus relief is therefore denied.

**C.**    <u>**Cumulative Error**</u> **(Claim 6)**

Petitioner's last claim for relief reiterates his previous allegations and argues that the cumulative effect of all the errors denied him a fair trial.  As discussed throughout this opinion, however, Petitioner has not demonstrated that *any* constitutional error occurred.  The Fifth Circuit has made it clear that cumulative error analysis is only appropriate where there is error to cumulate.  *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991); *United States v. $9,041,598.68*, 163 F.3d 238, 250 (5th Cir. 1999).  Allegations that, alone, are insufficient to demonstrate constitutional error cannot be combined to create reversible error.  *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.").  There is therefore nothing for this Court to cumulate.

Furthermore, even assuming Petitioner had established some sort of constitutional error, federal habeas relief would still not be warranted because the cumulative error doctrine provides habeas relief only where the constitutional errors committed in the state court so fatally infected the trial that they violate the trial's fundamental fairness.  *Derden*, 938 F.2d at 609.  Petitioner has made no such demonstration.  Relief is therefore unwarranted.

**VI.**   <u>**Certificate of Appealability**</u>

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward

when a district court has rejected a petitioner's constitutional claims on the merits:   The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds.  *Id*.  In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler,* 565 U.S. 134, 140-41 (2012) (citing *Slack,* 529 U.S. at 484).  In other words, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason*,* but also makes a substantial showing of the denial of a constitutional right.

 A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## VII.  <u>Conclusion and Order</u>

After careful consideration, the Court concludes that the majority of Petitioner's allegations (Claims 1, 3(e)-(h), 3(j)-(o), 3(q), 3(s), 4, and 5) are procedurally barred from federal habeas review.  Concerning the remainder of the allegations (Claims 2(a) and (b), 3(a-d), (i), (p), and (r)), Petitioner has failed to establish that the state court's rejection of the allegations on the

merits during his direct appeal and state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in Petitioner's state trial, appellate, and habeas corpus proceedings.  As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Christopher Kines's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 5th day of September, 2024.**


**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**